No. 10-56244

_____

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

BANGKOK BROADCASTING & T.V.
CO., LTD., a Thailand corporation
Plaintiff-Counter-defendant –Appellee,

v.

IPTV CORPORATION, a California corporation, et al.,
Defendants-Counter-claimants-Appellants

_____

APPEAL FROM A FINAL JUDGMENT OF THE UNITED STATES
DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
Hon. S. James Otero (Dist. Ct. Case No. 09-3803 SJO)

_____

**OPENING BRIEF OF APPELLANTS
RON PETCHA AND BKT GROUP**

_____

REZA SINA
SINA LAW GROUP
801 S. Figueroa St., 12th Floor
Los Angeles, CA 90017
Telephone: (213) 417-3661
Facsimile:  (877) 341-5578

Attorneys for Defendants-Appellants
IPTV Corporation, et al.

## CORPORATE DISCLOSURE STATEMENT

Appellants are not aware of any parent corporation or any publicly held corporation that own any shares of stock in IPTV Corporation or BKT Group.


Dated:   February 28, 2011            ___/s/Reza Sina_____
                                      Reza Sina

# TABLE OF CONTENTS

I.  STATEMENT OF JURISDICTION ...................................................... 1

    A.  DISTRICT COURT'S JURISDICTION ............................................... 1

    B.  THIS COURT'S JURISDICTION ...................................................... 1

    C.  TIMELINESS OF APPEAL .............................................................. 1

II.  ISSUES PRESENTED FOR REVIEW ................................................ 2

III.  STATEMENT OF THE CASE .......................................................... 3

IV.  STATEMENT OF FACTS .................................................................. 5

    A.  THE PARTIES. .............................................................................. 5

    B.  STIPULATED FACTS: THE HISTORY OF DEALINGS BETWEEN THE
        PARTIES FROM 2004 TO 2008. ..................................................... 5

    C.  BBTV FILED ITS LAWSUIT .......................................................... 8

    D.  THE COURT GRANTS BBTV'S PARTIAL SUMMARY JUDGMENT
        AND DENIES DEFENDANTS' MOTION FOR SUMMARY JUDGMENT. 8

    E.  THE TRIAL AND THE JURY'S INCONSISTENT VERDICTS. .............. 9

    F.  DISTRICT COURT PERMITS DOUBLE RECOVERY ON COPYRIGHT
        AND TRADEMARK DAMAGES AND ENTERS FINAL JUDGMENT. .. 10

    G.  DISTRICT COURT DENIES MOTION FOR A NEW TRIAL. .............. 10

V.  SUMMARY OF ARGUMENT ........................................................ 11

VI.  ARGUMENT .................................................................................. 13

    A.  THE DISTRICT COURT ERRED IN DENYING THE MOTION FOR A
        NEW TRIAL BECAUSE THE COPYRIGHT AND TRADEMARK
        DAMAGES AWARDS WERE INCONSISTENT ON THEIR FACE ....... 13

    B.  THE DISTRICT COURT ERRED IN ENTERING FINAL JUDGMENT
        WHICH INCLUDED BOTH COPYRIGHT AND TRADEMARK

DAMAGES BECAUSE THOSE AWARDS ARE DUPLICATIVE AND

AMOUNT TO DOUBLE RECOVERY ............................................. 17

    C.    THE DISTRICT COURT ERRED IN ALLOWING INTO EVIDENCE

WEBSITE CONTENT THAT WAS OVER TWO YEARS REMOVED

FROM THE ALLEGED INFRINGEMENT AND LAY TESTIMONY AS TO

THE COST OF PRODUCTION OF BBTV'S PROGRAMS IN THAILAND.

.............................................................................................. 21

VII.  CONCLUSION .................................................................... 24

CERTIFICATE OF COMPLIANCE............................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Duk v. MGM Grand Hotel, Inc.,*
   320 F.3d 1052 (9th Cir. 2003)................................................................... 13

*Nintendo of America v. Dragon Pacific Int'l,*
   40 F.3d 1007 (9th Cir. 1994)..................................................................... 17

*Ortiz v. Bank of America National Trust & Savings Association,*
   852 F.2d 383 (9th Cir. 1987)..................................................................... 13

*Ruvalcaba v. City of Los Angeles,*
   64 F.3d 1323, 1328 (9th Cir. 1995)........................................................... 10

*United States v. 99.66 Acres of Land,*
   970 F.2d 651, 658 (9th Cir. 1992)............................................................. 21

*United States v. Dunn*, 946 F.2d 615, 617 (9th Cir.), *cert. denied*, 502 U.S.
   950, 112 S.Ct. 401, 116 L.Ed.2d 350 (1991) ............................................ 21

*Ward v. City of San Jose,*
   967 F.2d 280 (9th Cir. 1991)..................................................................... 13

*Zhang v. American Gem Seafoods, Inc.,*
   339 F.3d 1020, 1033 (9th Cir. 2003)......................................................... 13

# I.    STATEMENT OF JURISDICTION

## A.    DISTRICT COURT'S JURISDICTION

The district court's subject matter jurisdiction arose under the copyright laws of the United States, 17 U.S.C. §§ 101, *et seq.* and the Lanham Act 15 U.S.C. §§ 1051 *et seq.*  Jurisdiction was conferred under 17 U.S.C. § 501 and 28 U.S.C. §§ 1331, 1338(a) and 1338(b).  The district court also had jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because this civil action is between citizens of a State and citizens or subjects of a foreign state and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  [Excerpts of Record ("ER") 58.]

## B.    THIS COURT'S JURISDICTION

This appeal, pursuant to 28 U.S.C. § 1291, was taken from a final judgment after a jury verdict and entry of judgment in favor of BBTV on July 8, 2010.  [ER 193-196.]  That order is final and appealable.

## C.    TIMELINESS OF APPEAL

The judgment in favor of Plaintiff was rendered on July 8, 2010 and entered on July 9, 2010.  [ER 193-196.]  Appellants timely appealed on August 6, 2010.  [ER 227.]  Accordingly, this Court has appellate jurisdiction.

## II.    ISSUES PRESENTED FOR REVIEW

1.    Whether an inconsistent verdict of $1.6 million for copyright damages and $1.3 million for trademark damages, which were based entirely on expert testimony that the damages from infringement were $1.6 million, requires a new trial on damages.

2.    Whether recovery for statutory copyright damages and disgorgement of profits for trademark infringement amounts to double recovery where there was a single, non-divisible act of infringement.

3.    Whether the district court erred in admitting as evidence BKT Group's website content suggesting that BKT Group made $10 million in revenues in the year 2006 when the infringement at issue was alleged to take place in 2008 and, not so coincidentally, the jury's total verdict was for approximately $10 million.

4.    Whether the district court erred in admitting a chart containing a summary of lay testimony as to BBTV's cost of production of its programs as they relate to its market share in Thailand, which had no relation on the use of BBTV's programs in the United States or harm suffered by BBTV.

### III.   <u>STATEMENT OF THE CASE</u>

BBTV is the largest broadcasting network in Thailand.  Since 2004, BBTV was sublicensing its programming to IPTV for sale and distribution in the United States.  IPTV is owned by Ms. Petcha.  Mr. Petcha and Mr. Wongchaiwat were managing employees and officers of IPTV.  The sublicensing agreements terminated in July 2008.  Thereafter, the events leading up to this litigation transpired.  IPTV continued to broadcast BBTV's programs for an addition year, contending it had a license to do so.  BBTV contended that it did not renew IPTV licensing rights.  [ER 57, 59]

On or about May 28, 2009, BBTV filed a copyright and trademark action against defendants IPTV, BKT, Mr. Petcha, Ms. Petcha, and Mr. Wongchaiwat.  Thereafter, BBTV filed a first amended complaint, adding claims for vicariously liability.  [ER 1-27, 57]

On May 11, 2010, the district court entered partial summary judgment in favor of BBTV, finding that defendants IPTV and Mr. Petcha were liable for copyright infringement.  [ER 279-280]

On May 19, 2010, a jury trial was held before Judge William D. Keller.  During trial, as part of a compromise, BKT Group stipulated to liability.  [ER 135-136]  Thus, it was left for the jury to determine (1) did IPTV and Mr. Petcha engage in willful or innocent infringement, (2) were

Ms. Petcha and Mr. Wongchaiwat contributorily or vicariously liable for copyright infringement, (3) whether any defendant was directly, contributorily, or vicariously liable for trademark infringement, and (4) damages resulting from any finding of liability.

On May 26, 2010, the jury rendered a verdict in favor of BBTV, awarding $1.6 million for copyright infringement, $7 million for statutory copyright damages, and $1.3 million for trademark infringement, a combined total just shy of $10 million. [ER 137-143] BBTV elected the statutory copyright damages award of $7 million. [ER 284 (Dkt. No. 257)]

On or about June 4, 2010, the parties submitted briefing on, *inter alia*, whether an award of trademark infringement damages in addition to copyright statutory damages constituted double recovery. [ER 144-147]

A final judgment was entered on July 9, 2010, in favor of BBTV. Defendants filed a motion for new trial. The district court denied the motion for new trial in its entirety. [ER 192-196]

On August 6, 2010, defendants filed a notice of appeal of the final judgment. [ER 227]

On February 1, 2011, the Court entered an order staying the briefing on this appeal as to appellants IPTV, Ms. Petcha and Mr. Wongchaiwat due

to their pending bankruptcy petitions.  The Court set a briefing schedule for Mr. Petcha and BKT Group.

## IV.  STATEMENT OF FACTS

### A.    THE PARTIES.

The parties are Plaintiff Bangkok Broadcasting & T.V. Co., LTD. ("BBTV") and Defendants IPTV Corporation ("IPTV"), BKT Group ("BKT"), Mr. Ron Petcha, Ms. Tip Petcha, and Mr. Noppadon Wongchaiwat.  BBTV is a corporation organized under the laws of Thailand. IPTV is a corporation incorporated under the laws of the State of California. IPTV also does business as ThaiTV.tv.   BKT Group is a corporation incorporated under the laws of the State of California.  [ER 57]

### B.    STIPULATED FACTS:  THE HISTORY OF DEALINGS BETWEEN THE PARTIES FROM 2004 TO 2008.

Beginning in 2003, IPTV entered into a series of sublicense agreements allowing it to exploit BBTV's programs in the United States. The most recent, and final, sublicense agreement between Media of Medias and IPTV was entered into in August 2007 and terminated on July 31, 2008. The sublicense agreement and translation was Trial Exhibit 10.  [ER 59]

The Media of Media's 2007 Sublicense Agreement was not renewed by Media of Medias.   On July 15, 2008, Mr. Petcha met with BBTV.

Specifically, he met with members of the Consideration of Program Schedule and Air Time Rental Committee ("CPSATR Committee"), including Mr. Chalor Nark-on (the Chairman of the CPSATR Committee) and Pattanapong Nuphan, a member of CPSATR Committee at BBTV's headquarters in Bangkok, Thailand. [ER 59]

The parties engaged in a series of negotiations. IPTV sent BBTV a letter dated July 29, 2008 and BBTV responded with a letter dated August 1, 2008. [ER 60]

On August 17, 2008, Mr. Petcha attended another meeting with the CPSATR Committee in Bangkok, Thailand. Following that meeting, IPTV sent BBTV a letter dated August 18, 2008. In response, BBTV sent IPTV a letter dated August 29, 2008. [ER 60]

On August 31, 2008, Mr. Petcha called Mr. Nuphan to discuss the CMC7P Committee's August 29, 2008 letter. Over the next three to four days, Mr. Petcha and Mr. Nuphan had numerous telephone conversations. [ER 60] Thereafter, BBTV sent IPTV a letter dated October 17, 2008. IPTV responded by sending BBTV a letter dated October 20, 2008. BBTV's final response was sent to IPTV in a letter dated November 5, 2008. [ER 60]

The parties had no contact with each other again until May 28, 2009.

From approximately August 1, 2008-July 31, 2009, IPTV reproduced, distributed, sold BBTV's programs -- exactly as they are first telecast on Channel 7 in Thailand without alteration -- through various channels, including broadband internet, video tapes, VCDs and DVDs. [ER 61]

IPTV had access to BBTV's programs. As soon as BBTV's program airs in Thailand, IPTV was able to make an electronic copy of it and transmit it to IPTV's office in Los Angeles, California to be used in making a master copy and copies thereof for distribution on videotape, CD and/or DVD or rebroadcast via satellite TV, cable TV, Pay Per View, broadband internet and/or online video-on-demand. [ER 61-62]

BBTV, *through IPTV*, had offered its programs for sale, rental and/or broadcast in the United States in interstate commerce under the mark "7 and Design Mark" since at least as early as 2003.



BBTV's trademark registration nos. 3,176,451 and 3,429,237 are valid and enforceable. When IPTV sold, made available for rental and re-broadcast BBTV's programs, the 7 and Design Mark appeared in the top right hand corner of the picture. IPTV advertised, offered for sale and sold

in interstate commerce pre-recorded compact discs, CD-ROMs, video compact discs, DVDs and videocassettes, satellite television broadcast, and internet service featuring programs bearing BBTV's 7 and Design Mark. [ER 62]

### C.     BBTV FILED ITS LAWSUIT.

On May 28, 2009, BBTV filed suit against defendants-appellants IPTV Corporation, BTK Group, Ron Petcha, Tip Petcha, and Noppadon Wongchaiwat alleging nine causes of action for: (1) copyright infringement; (2) inducement and contributory infringement; (3) trademark infringement in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a); (4) trademark dilution; (5) unfair competition and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a); (6) common law trademark infringement; (7) violation of California Business and Professional Code § 17200, et seq.; (8) breach of contract, and (9) constructive trust. [ER 257 (Dkt. No. 1)]   Thereafter, BBTV filed a first amended complaint, adding claims for vicariously liability.  [ER 1-27, 57]

### D.     THE COURT GRANTS BBTV'S PARTIAL SUMMARY JUDGMENT AND DENIES DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

On March 8, 2010, cross-motions for summary judgment were filed. The district court, Judge S. James Otero, granted BBTV's partial motion for

summary judgment, finding that IPTV Corporation and Mr. Petcha were liable for copyright infringement.  [ER 269, 279-280 (Dkt. No. 205)]

E.    THE TRIAL AND THE JURY'S INCONSISTENT VERDICTS.

On May 19, 2010, a jury trial was held before Judge William D. Keller, pursuant to a case transfer order.  [ER 135-136, 280 (Dkt. 209)] Prior to the start of trial and over appellants' objections, the district court permitted BBTV to use Trial Exhibit 20 in its opening statement presentation, which consisted of a printout from BKT's website.  [ER 96] The printout had a section stating, " 'About Us' - $10 million in revenue." The printout was based on information from the year 2006, over two years before the alleged infringement.  [ER 226]

The district court permitted a chart summarizing the lay testimony from an officer of BBTV as to the cost of production of BBTV's programs in Thailand and for viewers in Thailand.  [ER 106-107]

The jury ultimately returned verdict in favor of BBTV.  The jury awarded $1.6 million for copyright damages, $7 million for statutory copyright damages of willful infringement, and $1.3 million for trademark damages.  [ER 137-143]

**F.    DISTRICT COURT PERMITS DOUBLE RECOVERY ON COPYRIGHT AND TRADEMARK DAMAGES AND ENTERS FINAL JUDGMENT.**

On or about June 4, 2010, the parties submitted briefing on, *inter alia*, whether an award of trademark infringement damages in addition to copyright statutory damages constituted double recovery.  [ER 142-191] The district court ruled that it was not double recovery.  [ER 192]

A final judgment was entered on July 9, 2010, in favor of BBTV. Defendants filed a motion for new trial.  [ER 193-196]

**G.    DISTRICT COURT DENIES MOTION FOR A NEW TRIAL.**

On August 6, 2010, appellants moved for a new trial, or in the alternative, for a partial new trial on damages, or for a remittitur.  The motion was based on the following grounds:

(1)    Inconsistent verdicts: the verdict on copyright damages and trademark damages were inconsistent on their;

(2)    Error of law on numerous evidentiary rulings, such as (a) admission of BKT Group website content and BKT Group video and (b) admission of lay testimony regarding BBTV's cost of production of it's programs as they relate to its market share in Thailand, all of which substantially prejudiced defendants;

(3)    Against the clear weight of the evidence as to defendants Tip

Petcha and Noppadon Wongchaiwat;

(4)     that the damage award is excessive and violates due process; and

(5)     Remittitur on the award to ensure that it is constitutional. [ER 197-222]

The district court denied the motion for new trial in its entirety.  [ER 256]

## V.     SUMMARY OF ARGUMENT

This appeal is by two of five defendants-appellants, namely Ron Petcha and BKT Group Corp. ("BKT"), following a jury verdict in favor of respondent Bangkok Broadcasting & TV. Co., LTD. ("Respondent" or "BBTV") in a copyright and trademark infringement action. The issues raised on this appeal as to Mr. Petcha and BKT Group are the following:

First, the jury's verdicts were inconsistent and thus, a new trial was required. The verdict on copyright damages and trademark damages were inconsistent on their face as the jury awarded $1.6 million for copyright damages and $1.3 million for trademark damages.  Both awards were based entirely on expert testimony that the damages from infringement were $1.6 million.

Second, even assuming *arguendo* that the verdicts were not inconsistent, the district court erred in entering a judgment that included both copyright and trademark damages, which were duplicative. *Nintendo of America v. Dragon Pacific Int'l*, 40 F.3d 1007, 1010-11 (9th Cir. 1994) and its progeny are not applicable to this case. In *Nintendo*, there were two wrongful, divisible acts that formed the basis for the copyright damages and trademark damages. The conduct here cannot be separated into two separate wrongs. The basis for the damages awarded was a single, non-divisible act of selling programs on the internet and via DVD, which bore BBTV's unaltered trademark.

Third, the district court erred in admitting website content suggesting that BKT made $10 million in revenues from the infringement, when in fact the website content concerned the year 2006 and the infringement took place in 2008. And as the jury verdict reflects, the total sum awarded BBTV was $10 million. A reasonable inference can be drawn that the jury erroneously believed that, based on the website content, Mr. Petcha and BKT made $10 million from the infringement and hence, awarded that amount to BBTV.

Finally, the district court erred in permitting a chart summarizing lay testimony on BBTV's cost of production of its programs as they relate to its market share in Thailand, which has zero bearing on the use of BBTV's

12

programs in the United States.  Again, by permitting such testimony, the jury heard very large numbers been thrown around in trial, but those figures had no relation to the harm suffered by BBTV.  The only purpose for the introduction of those high costs of production figures was to erroneously suggest that a large award was necessary.

Accordingly, the judgment entered by the district court must be reversed and a new trial should be ordered on damages.

## VI.   ARGUMENT

### A.   THE DISTRICT COURT ERRED IN DENYING THE MOTION FOR A NEW TRIAL BECAUSE THE COPYRIGHT AND TRADEMARK DAMAGES AWARDS WERE INCONSISTENT ON THEIR FACE.

A court reviewing a judgment on allegedly inconsistent verdicts must uphold the judgment if it is possible to reconcile the verdicts on any reasonable theory consistent with the evidence. (*Ward v. City of San Jose*, 967 F.2d 280 (9th Cir. 1991) (citing *Ortiz v. Bank of America National Trust & Savings Association*, 852 F.2d 383, 388 (9th Cir. 1987)). "[T]he test is not whether there was substantial evidence for the jury's conclusion, but whether it is possible to reconcile the verdicts. (citations)." *Zhang v. American Gem Seafoods, Inc.*, 339 F.3d 1020, 1033 (9th Cir. 2003).

13

The verdict on copyright damages in the amount of $1.6 million and trademark damages in the amount of $1.3 million are inconsistent on their face. *See Duk v. MGM Grand Hotel, Inc.* 320 F.3d 1052, 1057-1059 (9th Cir. 2003) (colleting cases).

The only evidence presented regarding damages was the expert testimony of Jeffrey Kinrich.  Mr. Kinrich did not differentiate at all between copyright and trademark damages.  His solitary attempt to introduce trademark damages was the following testimony:

> A.    Yes, unjust enrichment essentially says that if a party earned a benefit wrongly from, for example, using copyrighted or trademarked materials, they should be -- that enrichment, the benefit they got is unjust. That's the phrase that is in the law, and that amount should be what is called disgorged or treated as damages. And that's what I have done in this first summary point.

> Q.    And traditionally, the way that unjust enrichment is calculated in copyright and trademark law is that the plaintiff shows the revenues that are related to the infringing activities, and then the defendant comes forward and either quibbles with those activities that are infringing or says there's some costs that should be allocated. That's traditionally the model?
> . . .

> A.    In fact, I was going to say not only is it traditional, but it's my understanding of what the law is.

(ER 119-120.)

Next, Mr. Kinrich explained his disgorgement of profit analysis by looking at the cost of goods sold and the profits derived from the goods *solely* from the sale of BBTV's programs on the internet and DVD:

> Q.     Okay. We see two categories of -- at the top, you sort of have a summary of how you went about calculating the theory of unjust enrichment. And what does that show in that box?
>
> A.     It shows the very simple calculation that I had to do. I had to take -- to determine unjust enrichment, I had to take IPTV's profits with the infringement and subtract what their profits would have been without the infringement. And the difference is unjust enrichment. That's pretty simple calculation. And then the bottom half shows the numbers that I used to actually do the calculation testified regarding the same disgorgement of profits analysis for both.
>
> Q.     Okay. Now, you are including, it appears, two lines of business. One is Internet, and one is DVD; correct?
>
> A.     Yes.
>
> Q.     Okay. Are those the only lines of business that IPTV does?
>
> A.     They are not.

(ER 121-123.)

Mr. Kinrich's testimony makes clear that the only evidence of disgorgement (damages) that was introduced into evidence was the sales of BBTV's programs on the internet and via DVD.   The testimony never

15

separated damages for copyright infringement or trademark infringement. In

fact, Mr. Kinrich emphasized this point:

Q.    Okay. So you've only included about half of the amount
      of business that this company was doing?

A.    That's correct.

Q.    All right. Internet. Why did you include that line of
      business?

A.    Because it was clear, both from the numbers and from
      Mr. Petcha's testimony, that when IPTV stopped
      broadcasting, stopped providing BBTV's product to its
      Internet customers, the Internet sales fell dramatically as
      a result of not having BBTV Channel 7 available to its
      customers. And so that fall-off is what I'm measuring
      here. The difference between what they were getting on
      an average monthly basis, add it up across the months, to
      what they would get on an average monthly basis during
      a period when they did not have BBTV's product.

Q.    Okay. And DVD's, similarly we just talked about, while
      the infringing was going on, they have hundreds of
      thousands of dollars per year, and then afterwards, zero.

A.    Yes, and that's different than Internet. Internet fell off but
      did not go to zero. DVD's, Mr. Petcha actually said that
      without BBTV, he can't sell any DVD's, and the DVD
      sales confirmed his statement, because they go to zero on
      the financial records.

Q.    Did IPTV use BBTV's copyrighted programs only on
      Internet and DVD, or did it also show those programs to
      consumers and get money as a result in other lines of
      business?

A.    My understanding is it also used BBTV's programs in
      other lines of business which I have not included ***and***

16

other components that are related to these lines of business that I have not included.

(ER 121-122 (emphasis added).)

In the end, the same damage estimate was presented on disgorgement of profits for both copyright and trademark infringement, which was $1.6 million. A figure of $1.3 million was never spoken of by Mr. Kinrich. It was never spoken of by anyone. A $1.3 million award for trademark infringement is inconsistent with the testimony of Mr. Kinrich and with the damages awarded for copyright infringement.

Accordingly, the verdicts are inconsistent, requiring that the judgment below be reversed and a new trial ordered on the issue of damages.

**B.    THE DISTRICT COURT ERRED IN ENTERING FINAL JUDGMENT WHICH INCLUDED BOTH COPYRIGHT AND TRADEMARK DAMAGES BECAUSE THOSE AWARDS ARE DUPLICATIVE AND AMOUNT TO DOUBLE RECOVERY**

Assuming *arguendo* that the verdicts are not inconsistent, the district court erred in entering a judgment which included statutory damages for its copyright claim and actual damages (disgorgement of profits) on BBTV's trademark claim.

In holding that there was no double recovery of copyright and trademark damages, the district court relied exclusively on *Nintendo of*

17

*America v. Dragon Pacific Int'l*, 40 F.3d 1007, 1010-11 (9th Cir. 1994).  [ER 192]   In *Nintendo*, there was a single event capable of being divided to separate acts, each supporting only one legal theory.  Specifically, the Court found that the single event of selling game cartridges containing Nintendo compatible games constituted two separate wrongful acts -- copyright and trademark infringement -- and permitted recovery for both. *See Nintendo*, 40 F.3d at 1010. There the defendant's game cartridges contained programs that infringed Nintendo's games--the conduct giving rise to copyright infringement. Additionally, the defendant represented (by adding the Nintendo logo to the cartridges) that they contained *genuine* Nintendo products -- the conduct giving rise to trademark infringement. *Id*.

The Court reasoned that two distinct wrongful acts were committed when defendant sold its cartridge because had the defendant "sold the cartridges without representing that they were Nintendo products, he would have [nonetheless] committed the wrong of copyright infringement. Or, if [he] had represented that the cartridges were Nintendo games, even though they contained no Nintendo games, he would have committed the wrong of trademark infringement." *Id*. at 1010-11.

Thus, in *Nintendo*, it was possible to reduce the event of selling a game cartridge to give rise to only one cause of action because had the

18

defendant not represented the cartridge as a Nintendo product, his act of selling the cartridge could give rise only to copyright infringement. Hence, it was the defendant's additional act of stamping the cartridges with the Nintendo logo that gave rise to the trademark damages.

In this case, however, there is no such conceptual reduction or separation possible. The trademark claim arose from the very same conduct that gave rise to the copyright claim. Each work that Defendants sold contained the BBTV trademark. Defendants did not add the trademark to the programs, like the defendant did in the *Nintendo* case. That is, when Defendants sold or copied works covered by both trademark and copyright without authorization, it infringed both protections and it is impossible to conceptualize a scenario whereby selling or copying a dually protected work could give rise to one cause of action but not the other.

Because the trademark is inherently embedded on the programs, Defendants' act of distributing the programs cannot be divided into two separate acts—i.e., one act copying (copyright infringement) and another act of representing ownership of the mark (trademark infringement). Accordingly, the trademark and copyright infringement acts were the same and permitting recovery for both claims is duplicative.

19

Moreover, as explained above, BBTV's own expert, Jeffrey Kinrich, testified that the same exact measure of damages was used for trademark and copyright and that the two were not separate. His testimony was that, to fully compensate BBTV for both the trademark and copyright claim, one must disgorge Defendants' profits from the same act: selling BBTV's programs without authorization. [ER 122-123] In his opinion, a recovery based on copyright infringement of a particular protected material would also fully compensate BBTV for any trademark infringement of that same good. [ER 119-120]

In sum, it cannot be clearer that permitting recovery of both statutory damages for copyright and actual damages under trademark is duplicative. BBTV's election to go with statutory damages under the copyright claim does not change this fact. The jury used the same disgorgement of profits measure to arrive at the damages for the trademark claim that it did for the copyright claim. BBTV's own expert testified that there is only one disgorgement of profits analysis applicable to both claims. Defendants' act of selling BBTV's programs cannot be separated into two claims because the very same act infringed both rights. Unlike the *Nintendo* case where the defendant could have sold the game cartridges without representing that they

20

were Nintendo products, Defendants here could not sell BBTV's programs without BBTV's trademark because it is embedded in the program.

Accordingly, entering a judgment awarding BBTV $1.3 million in trademark damages was duplicative of its election to recover statutory damages for the copyright claim in lieu of the actual damages awarded for the copyright claim. The judgment should be reversed.

### C. THE DISTRICT COURT ERRED IN ALLOWING INTO EVIDENCE WEBSITE CONTENT THAT WAS OVER TWO YEARS REMOVED FROM THE ALLEGED INFRINGEMENT AND LAY TESTIMONY AS TO THE COST OF PRODUCTION OF BBTV'S PROGRAMS IN THAILAND.

The Court made error of law on admission of (a) BKT website content suggesting that BKT earned $10 million in revenue and (b) a chart summarizing the testimony of a BBTV employee regarding the cost of production of its programs—even though they had zero relevance to distribution of BBTV programs in the U.S., all of which substantially prejudiced defendants. *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995).

District courts are granted broad discretion in admitting evidence, and their rulings are reviewed only for an abuse of discretion. *United States v. Dunn*, 946 F.2d 615, 617 (9th Cir.), *cert. denied*, 502 U.S. 950, 112 S.Ct. 401, 116 L.Ed.2d 350 (1991). A new trial is only warranted when an

21

erroneous evidentiary ruling "substantially prejudiced" a party.  *United States v. 99.66 Acres of Land*, 970 F.2d 651, 658 (9th Cir. 1992).

With respect to the BKT evidence, the Court erred in admitting BBTV's Trial Exhibit Number 20 --  "About Us" BKT Group's web printout- $10 million in revenue."  [ER 226]

The admission of that exhibit substantially prejudiced BKT and Mr. Petcha.  Exhibit 20 is a website printout that is completely irrelevant to any claims of copyright or trademark infringement.  The content in that Exhibit is regarding BKT's group's revenues from 2005 and 2006.  The claims at issue in this case concerned infringement between the years 2008-2009.  The content, therefore, was irrelevant and should have been excluded.  [ER 226]

Moreover, the content suggests that BKT Group earned revenues of $10 million dollars.  The wealth of the defendants was immaterial to any of the claims made.

It is not a coincidence that the full amount of the verdict was nearly $10 million ($1.6M Copyright + $7M Statutory + $1.3M Trademark).  It is reasonable to infer that the Jury's verdict corresponded perfectly with Exhibit 20.

Accordingly, Exhibit 20 should not have been admitted or used by BBTV in the presentation of its case.

22

With respect to the chart summarizing the testimony of BBTV's employee, Palarkorn Somsuwan, regarding the production costs of BBTV, the Court erred in permitting such evidence in the jury room because it had no correlation at all to the disgorgement of profits analysis or statutory damages. The introduction of such evidence was nothing more than an attempt by BBTV to throw out big numbers (regardless of relevance) so jury would not be shocked when BBTV asked for a large verdict.

Indeed, Mr. Somsuwan testified that the production costs of BBTV's programs were unaffected by sales outside of Thailand:

> Q. BY MR. SINA: The tens of millions of dollar that you keep testifying to that BBTV spent in producing those programs is only relevant to BBTV's revenue in Thailand; correct?
>
> A. Yes, initially.
>
> Q. Okay. So you can't -- let me rephrase it.
> It is not fair or appropriate to ask that IPTV
> pay some large portion of that cost of production, is it?
>
> A. The losses or the damages are the issues that the attorneys would handle, and this, I do not have any understanding.

[ER 114]

The admission of such evidence had no relevance to the harm suffered by BBTV. It was used solely to incite a willingness to award a large verdict,

regardless of what relation it bore to the actual harm suffered. It substantially prejudiced the rights of Mr. Petcha and BKT and, as such, the judgment below should be reversed.

## VII.  CONCLUSION

Accordingly, appellants respectfully request that this Court: (a) reverse the judgment of the district court denying the motion for new trial and order a new trial on damages; (b) reverse the judgment issued in favor of BBTV, and direct the district court to order a new trial; (c) award appellants their costs on this appeal; and (d) award appellants such other relief as this Court deems just and proper.

Dated:   February 28, 2011        Respectfully submitted,
                                  SINA LAW GROUP


                                  ___/s/Reza Sina_____
                                  Reza Sina
                                  Attorneys for Defendants-Appellants

## <u>STATEMENT OF RELATED CASES</u>

There are no known related cases pending this Court.


Dated:  February 28, 2011          ____/s/Reza Sina_____
                                   Reza Sina

## CERTIFICATE OF COMPLIANCE
## PURSUANT TO FED. R. APP. 32(a)(7)(C) AND CIRCUIT RULE 32-1

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, I certify that Appellant's Brief is proportionately spaced, has a typeface of 14 points or more and contains 4,662 words.


Dated:   February 28, 2011            ____/s/Reza Sina_____
                                      Reza Sina